Helm, J.
The personal property attached in this action consisted partly of engines, boilers, pumps, etc. This property, by direction of plaintiff’s attorney, the sheriff held possession of under the writ at the mine where it was when attached, for the period of nine months. To do this he was compelled to employ a keeper, whom he paid $5 per day. The suit was finally dismissed, with the consent of the plaintiff, and at its costs. The clerk taxed as costs the expense of keeping the property, at $5 per day, and also that of removing it at the expiration of the time mentioned aforesaid and storing until the termination of the suit. A motion to retax costs was overruled by the Court.
There is nothing in the record requiring us to pass upon the reasonableness or justice of the sheriff’s charges. He was ordered by the plaintiff not to store, but to hold possession at the mine. The mine may have been so situated, and the hardships and dangers so great, that $5 per day was the least sum for which a reliable person could be procured to perform the duty. But the finding of the County Court upon this matter is not presented for our consideration.
The questions before us for adjudication are: Is the sheriff entitled to any reimbursement at all for these expenses? If he is, can they be recovered of plaintiff below ? And if these two questions are answered affirmatively, can they be taxed as costs in this suit, by the clerk, or must the officer resort to a separate action therefor?
Upon the first two of these questions there can be no doubt. This is not the case of a promise of extra compensation in the performance of a duty for which the fee is fixed by statute. The point presented is simply the sheriff’s right to just and equitable expenses incurred in the proper care and keeping of attached property while in his custody. For obvious reasons, no fees are fixed and no rule is stated by statute for determining these expenses. Neither, on the other hand, is there anything in the statutes which, in terms.or by implication, requires him to make these expenditures without compensation therefor. The law does compel him to take and retain possession of the property; and it holds him responsible for the preservation and safe keeping thereof. There were formerly many doubts as to his right to reimbursement for expenses in *486 curred in this way; but the question now seems thoroughly settled in his favor. The rule now is, that if plaintiff recover, and the property be ultimately sold by the officer under execution in the suit, he may deduct these charges, if allowed, out of the proceeds received ; if the judgment goes for defendant, or, as in the suit at bar, the cause be dismissed, he may look to the plaintiff therefor. See the following works and cases cited therein: Drake on Attachment, Sec. 311; Story on Bailments, Sec. 131; Crocker on Sheriffs, Secs. 1144 and 824.
The officer’s rights are, if possible, stronger when the plaintiff directs at what place and in what manner the property shall be held under the writ.
The remaining question before us is more difficult to answer. The authorities seem to be somewhat in conflict. But upon principle, there appears to be no reason why these expenses may not properly be allowed and taxed as costs. Technically they are not fees; but they are disbursements necessarily required in the performance of a duty enjoined upon the officer by law. Costs are not confined to fees paid the officers; they are “ expenses incurred by the parties in prosecuting or defending a suit at law.” 1 Bouvier Law Dict., 370.
Such charges as these are made in connection with the suit, and the plaintiff or defendant, as the case may be, is liable therefor, just as he is for the regular fees. Our statutes allow the successful party to recover his costs, unless the Court otherwise directs. Many of the cases hold that from the date of the levy until the final determination of the attachment proceeding, the defendant is primarily liable to the officer for the expenses of keeping. Supposing the defendant in this case had paid the sheriff the charges under consideration, would they not be such “ expenses incurred in the suit ” as would properly be taxable as costs against the plaintiff? Theoretically, the officer collects his fees and expenses at or before the performance of the duties in connection with which they become due; but practically, almost all sheriffs, if the parties litigant be responsible, wait until the termination of the case for a large part of their fees and disbursements. This forbearance does not in any way interfere with the officer’s right to his pay.
We assent to the proposition that fees and costs cannot be collected unless allowed by statute. But, as above indicated, it *487 is our opinion that the disbursements under consideration are costs within the meaning of our laws; if we are correct in this there is no more reason for remitting the officer to a separate suit for these charges than for regular fees not collected in advance. To require the institution of a separate suit in every case where the sheriff fails to collect fees in advance, would be disastrous to litigants as well as himself. There is no necessity for such a rule; if these expenses are allowed as costs by the Court, and taxed by the clerk, the party dissatisfied can, by a motion to retax, as fully and fairly inquire into and try the legality, justice and reasonableness of the same, as he could in another action. Parties ought not to be harrassed with a multiplicity of suits, and it is to the interest of all concerned that the additional trouble and expense of a new action be avoided.
But the amount of these expenses is not and cannot be fixed by statute, and they are not properly taxable as costs until allowed by order of the Court or Judge; we think the sheriff’s account therefor should first be so examined and allowed. The clerk ought not to tax such charges as costs upon his own motion in the first instance.
We do not say that a separate suit therefor may not be maintained by the officer; our conclusions are that he may present his bill in the attachment proceeding, to the Court or Judge, and procure an order allowing the same, or so much thereof as may be deemed proper; that the amount so allowed may be taxed and recovered as other costs of the suit; that although the Court has passed upon this question, a party complaining may, by his motion to retax, procure a rehearing and re-examination, and have his objections fully adjudicated.
In this case it appears that a motion to retax was made and the questions raised thereby were fully tried; we are of opinion, therefore, that the action of the clerk in taxing these costs, without an order of the Court or Judge, could not have so prejudiced plaintiff in error as to justify a reversal.
The judgment will be affirmed.
*488 In Marrier v. St. Paul M. & M. Ry. Co. (Supreme Court of Minnesota, January, 1884,) it was sought to hold the Company liable for the destruction of plaintiffs hay by fire, communicated by burning grass ignited from a fire negligently left burning by section men employed by the defendant to repair its railroad track, which fire they had kindled at noon on the Company’s right of way, for the purpose of warming their coffee. But the Court held otherwise, and said:
“The act of these section men in building a fire to warm their own dinner was in no sense an act done in the course of and within the scope of their employment, or in the execution of defendant’s business. For the time being they had stepped aside from that business, and in building this fire they were engaged exclusively in their own business, as much as they were when eating their dinner, and were for the time being their own masters, as much as when they ate their breakfast that morning or went to bed the night before. The fact that they did it on defendant’s right of way is wholly immaterial, in the absence of any evidence that defendant knew of or authorized the act. Had they gone upon the plaintiff’s farm and built a fire the case would have been precisely the same. It can no more be said that this act was done in the defendant’s business, and within the scope of their employment, than would the act of one of these men in lighting his pipe after eating his dinner, and carelessly throwing the burning match into the grass. (See Williams v. Jones, 3 Hurl. & C., 256.) The fact that the section foreman assisted in or even directed the act does not alter the case. In doing so he was as much his own master and doing his own business as were the section men. Had it appeared that it was part of his duty to look after the premises generally, and extinguish fires tbahmight be ignited on them, the omission to put out the fire might possibly, within the Case of Chapman v. N. Y. P. R. Co., 33 N. Y., 369, be considered the negligence of the defendant. But nothing of the kind appears, and the burden is upon plaintiff to prove affirmatively every fact necessary to establish defendant’s liability.”